1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# EASTERN DISTRICT OF CALIFORNIA

10
11

**FRANK ENEPI SISNEROZ**,

CASE NO. 07cv0500-JAH(POR)

12

Petitioner,

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

vs.

13

**PEOPLE OF THE STATE OF
CALIFORNIA**,

14
15

Respondent.

16

Petitioner Frank Enepi Sisneroz ("Sisneroz"), proceeding *pro se* and *in forma pauperis*, seeks

17

a 28 U.S.C. § 2254 writ of habeas corpus.  He challenges his involuntary civil commitment in the

18

custody of the California Department of Mental Health ("DMH") as a sexually violent predator

19

("SVP"), pursuant to a judgment of the Tulare County Superior Court in Case No. 29525 predicated

20

on CAL. WELF. & INST. CODE §§ 6600, *et seq.*, California's Sexually Violent Predator Act ("SVPA").

21

He asserts two grounds for relief:  violations of substantive and procedural due process associated with

22

delay in trying one recommitment petition, then the consolidation for trial of two recommitment

23

petitions covering successive periods; and violations of due process and witness confrontation rights

24

through the admission at his recommitment bench trial of hearsay evidence from prosecution experts,

25

over defense objections citing Crawford v. Washington, 541 U.S. 36 (2004).  Respondent filed an

26

Answer, and Sisneroz filed a Response.  After careful consideration of the record, the parties'

27

arguments, and pertinent legal authority, for the reasons discussed below, the Petition is **<u>DENIED</u>**.

28

# I.      BACKGROUND

Sisneroz expressly adopts the factual and procedural history from the January 26, 2006 unpublished Opinion by the California Court of Appeal affirming on direct appeal the judgment recommitting him as a SVP.  Pet. p. 5; Pet. Exh. B; Lodg. No. 4.

> Defendant pled guilty in 1985 to oral copulation by force.[1] He pled no contest in 1991 to committing a lewd and lascivious act on a child under the age of 14 and rape with a foreign object.[2]

> On February 2, 1998, defendant was adjudicated a sexually violent predator (SVP) and committed to Atascadero State Hospital for two years.   Defendant's original commitment was extended to February 2, 2002.

> On December 4, 2001, the People filed a recommitment petition seeking to extend defendant's commitment until February 2, 2004. [CT 1-44.]  The court found probable cause to sustain the petition and set the matter for trial on December 4, 2002.   There were multiple continuances of the trial date and the matter was eventually set for trial on September 15, 2003.

> On August 29, 2003, while trial on the first petition was pending, the People filed a second recommitment petition, seeking to extend defendant's commitment until February 2, 2006.

> On September 15, 2003, trial on the first petition was trailed to September 17, 2003. During the proceedings on September 17, defense counsel informed the court that defendant was "waiving the trial at this

---

[1]  The January 28, 1985 conviction of one count of oral copulation by force of a 14-year-old boy in August 1984 was for a violation of CAL. PEN. CODE § 288a, subd. (c). Sisneroz's guilty plea entailed factual admissions he:  took the minor to his trailer; gave him three bears; encouraged him to become a member of his "familia" for the boy's "protection;" threatened him that he might be killed if he did not join the "familia;" pierced his ear as "initiation;" injected heroin into his arm; ordered the boy to masturbate; gave the boy a total of twenty-four heroin injections in various parts of his body, including his penis; sodomized the boy; and placed his penis in the boy's mouth.  The boy passed out, then awoke the next morning with Sisneroz naked next to him.  CT 214, 228, 231; 3 RT 99-101, 173-174; Suppl. CT 9-10, 18-20.  Sisneroz was sentenced to an eight-year term in state prison for that offense.  CT 214.

[2]  The March 15, 1991 conviction of one count of lewd and lascivious acts on a child under age 14 and of one count of rape with a foreign object in October 1990 were violations of CAL. PEN. CODE §§ 288 and 289, subd. (a), respectively.  CT 126; RT 176; Suppl. CT 23. The facts underlying those crimes, to which Sisneroz entered a no contest plea, included:  he babysat a nine-year-old boy so the mother, whom Sisneroz had known for about two weeks, could attend a wedding reception; Sisneroz was drinking alcohol, drove the boy to the reception, and on the way struck him on the chest when he refused to call Sisneroz "the boss;" he told the boy he was going to be his "sex teacher;" at the reception, the boy's mother instructed Sisneroz to take the boy back home; he instead took the boy to a K-Mart parking lot, locked the car doors, and would not let him leave; he made the boy put his finger in his own rectum, then put his finger in the boy's rectum; he threatened to "butt ream" the boy; and he fondled and kissed him on the mouth. 3 RT 101-102, 175; Suppl CT 10, 20-22. Sisneroz was sentenced to a six-year term in state prison for those crimes.  CT 216.

time" due to the filing of the second recommitment petition, explaining "we're going to consolidate both so that we only have one hearing." [1 RT 2.] Defense counsel requested that the court set the probable-cause hearing on the second recommitment petition for December 12, 2003. The court granted this request.

Following the hearing on December 12, the court found probable cause to sustain the second petition and scheduled a trial date of April 19, 2004. On April 19, the court granted the People's unopposed motion to consolidate the first and second petitions. Both petitions were tried simultaneously to the court and, on April 22, 2004, the court found that defendant would remain an SVP. As a result, defendant's commitment was extended until February 2, 2006. [CT 190-191.]

(Lodg. 4, pp. 2-3.)

Three psychiatric professionals testified at Sisneroz's April 20-22, 2004 consolidated bench trial: Dr. Jay Seastrunk;[3] Dr. Dawn Starr;[4] and Dr. Douglas Korpi.[5] Each of the experts was an independent contractor with DMH's SVP evaluation panel. Each diagnosed Sisneroz with particular sexual/psychological/personality disorders and polysubstance abuse, based on standard evaluation

---

[3] Dr. Jay Seastrunk, a staff psychiatrist at Atascadero State Hospital ("ASH"), had evaluated Sisneroz in 2001 and again in 2003, based on information in Sisneroz's files and on previous contacts he had had with him at ASH. Sisneroz declined to be interviewed for the evaluations. He diagnosed Sisneroz as suffering from the mental disorder of pedophilia ("male primarily nonexclusive"), a personality disorder not otherwise specified ("NOS"), polysubstance abuse, and, in 2001, with borderline intellectual functioning, a diagnosis he modified in his 2003 evaluation to be cognitive disorder NOS rather than borderline intellectual functioning. 3RT 102-03, 107, 109-111, 120-123. He recommended a finding Sisneroz remain a SVP as defined by statute after forming the opinion there was a substantial and well-founded risk he would sexually reoffend in a violent and predatory manner without confinement and treatment. 3 RT 120-125.

[4] Dr. Dawn Starr, a clinical psychologist, evaluated Sisneroz in 2001 and 2003. Sisneroz declined to allow her to interview him for those evaluations, so she based her evaluation on information from his files and his ASH records. She diagnosed him as suffering from pedophilia, sexual attraction to males- nonexclusive type, polysubstance dependence, and cognitive disorder NOS. 3 RT 179-81, 225-226. She found he had some features consistent with an antisocial personality disorder. 3 RT 180. She scored him the same as had Dr. Seastrunk on a standard assessment tool, using that score plus certain dynamic factors not accounted for in the instrument, to form the opinion there was a substantial and well-founded risk Sisneroz would reoffend in a predatory and violent manner without confinement and treatment, meeting the criteria for commitment under the SVPA. 3 RT 185-89, 191-192.

[5] Dr. Douglas Korpi, a licensed psychologist, evaluated Sisneroz in 2003, basing his professional opinions and diagnoses on information in Sisneroz's files and records, as had the others when Sisneroz refused to be interviewed. He diagnosed Sisneroz as suffering from pedophilia, nonexclusive type, and polysubstance dependence, with a provisional diagnosis of antisocial personality disorder. 3 RT 245-148, 254-256. He scored Sisneroz the same as had Drs. Seastrunk and Starr on the standard assessment instrument and, based on that score as well as certain dynamic factors not accounted for in that tool, formed the same opinion as the other two evaluators with respect to Sisneroz's meeting the criteria for SVPA commitment. 3 RT 259-261.

1    tools, diagnostic protocols, and risk assessment instruments.  Although Sisneroz refused to be

2    interviewed by any of them in connection with the recommitment proceedings, each had extensively

3    reviewed the documentary record and history, and two had evaluated him twice associated with  his

4    civil recommitments. Each noted Sisneroz refused to participate in the four-step graduated treatment

5    program available to SVPs at ASH, getting no further than Phase One.  3 RT 112-117, 181-184, 257,

6    260-261.  Each testified about the details of his underlying criminal conduct to support findings of the

7    requisite predicate offenses and as informing their diagnoses, in reliance on his Department of

8    Corrections files and ASH records.  Each testifying expert was subject to cross-examination by

9    Sisneroz's counsel.  Based on their articulated findings, each expert concluded Sisneroz remained a

10   SVP as defined by statute, with a likelihood he would reoffend if released, and who should remain

11   confined in the custody of the DMH for the proposed  recommitment period. *See* fns 3-5, above.

12        In its reasoned decision on the merits, the Court of Appeal rejected Sisneroz's arguments the

13   court lacked authority to consolidate the two recommitment petitions for trial and due process was

14   violated by the delay in trying the first petition.  Lodg. 4, pp. 3-6.  The court also rejected Sisneroz's

15   argument the court's admission of hearsay evidence from the expert witnesses, in the form of

16   testimony derived from the contents of reports associated with his underlying convictions to prove

17   they qualified as predicate offenses under the SVPA, allegedly violated Crawford, 541 U.S. 36.  Lodg.

18   4,  pp. 6-7.

19        Sisneroz petitioned for review.  Lodg. 5.  In its April 18, 2006 *en banc* decision, the  California

20   Supreme Court summarily denied the petition, without comment on the merits of his claims or citation

21   to authority.  Lodg. 6.  Sisneroz filed this federal habeas petition on March 30, 2007.  Dkt No. 16.  The

22   case became fully briefed on June 18, 2008, with the filing of his Traverse.  The matter was reassigned

23   from the United States District Court for the Eastern District of California to the undersigned visiting

24   District Judge on November 25, 2008.  Dkt No. 21.

25   **II.      DISCUSSION**

26        **A.      Legal Standards**

27            **1.      28 U.S.C. § 2254 Habeas Review**

28   "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an

                                         - 4 -                                    07cv0500

application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a) (West 2006). Only errors of federal law can support federal intervention in state court proceedings, and only to correct such errors. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation). Federal habeas courts are bound by the state's interpretation of its own law. Himes v. Thompson, 336 F.3d 848, 852 (9th Cir. 2003); Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal courts may not reexamine state court determinations on state law issues).

The habeas petition of any person in state custody filed in federal court after April 24, 1996 is decided under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 327 (1997). AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to **any claim that was adjudicated on the merits** in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court of the United States; **or**
>
> (2) resulted in a decision that was based on an **unreasonable determination of the facts** in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2006) (emphasis added).

"[C]learly established Federal law . . . ' refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.' " Carey v. Musladin, 549 U.S. 70, 74 (2006) quoting Williams v. Taylor, 529 U.S. 362, 412 (2000) (the lack of a holding on the issue presented precluded a finding the state court's decision was contrary to or an unreasonable application of clearly established federal law); see also Lockyer v. Andrade, 538 U.S. 63, 73-76 (2003).

> As we stated in Williams, § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. at 404-405 . . . The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one. Id., at

- 5 -

1
2
3

> 409-410. . . . *See also* <u>id.</u>, at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

4   <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002), *quoting* <u>Williams</u>, 529 U.S. 362; *see* <u>Weighall v. Middle</u>, 215

5   F.3d 1058, 1062 (9th Cir. 2000) ("unreasonable application" requires a finding the state court's

6   decision was "clearly erroneous").

7        "AEDPA establishes a 'highly deferential standard for evaluating state-court rulings, which

8   demands that state-court decisions be given the benefit of the doubt.' " <u>Womack v. Del Papa</u>, 497 F.3d

9   998, 1001 (9th Cir. 2007), *cert. den. sub nom* <u>Womack v. McDaniel</u>, -- U.S. --, 128 S.Ct. 928 (U.S.

10   Jan. 7, 2008), *quoting* <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002).  Federal courts must presume

11   the correctness of a state court's determination of a factual issue.  The petitioner has "the burden of

12   rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

13        Denial of a habeas petition by the California Supreme Court "without comment or citation

14   constitute[s] a decision on the merits of the federal claims," and "such claims [are] subject to review

15   in federal habeas proceedings."  <u>Hunter v. Aispuro</u>, 982 F.2d 344, 347-48 (9th Cir. 1992).  Where

16   there is no reasoned decision from the state's highest court, the federal court "looks through" to the

17   rationale of the underlying decision.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 ("Where there has been

18   one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the

19   judgment or rejecting the same claim rest upon the same ground"); <u>Campbell v. Rice</u>, 408 F.3d 1166,

20   1170 (9th Cir. 2005) ("When applying these standards, we review the 'last reasoned decision' by a state

21   court"), *citing* <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir.2002).

22        The California Court of Appeal reached the merits of both Sisneroz's federal claims in a

23   reasoned decision.  Lodg. 4.   The California Supreme Court's summary denial of his petition for

24   review  constitutes a decision on the merits of those claims.  *See* <u>Hunter</u>, 982 F.2d at 347-48.  The

25   claims are thus exhausted, and they were timely presented in a federal habeas petition filed within

26   AEDPA's one-year statute of limitations.  28 U.S.C. § 2244(d)(1).

27   \\

28   \\

## 2.      California's Sexually Violent Predator Legislation

The California Supreme Court in <u>People v. Superior Court (Ghilotti)</u>, 27 Cal.4th 888, 902-05 (2002) provides a detailed overview of the SVPA, CAL. WELF. & INST. CODE §§ 6600, *et seq.*[6] That legislation, effective January 1, 1996, "provides for the involuntary civil commitment of certain offenders, following completion of their prison terms, who are found to be SVP's because they have previously been convicted of sexually violent crimes and currently suffer diagnosed mental disorders which make them dangerous in that they are likely to engage in sexually violent criminal behavior." <u>Ghilotti</u>, 27 Cal.4th at 902; *see* Section 6600(a)(1).

The SVPA codifies a process involving several administrative and judicial stages to determine whether a convicted sex offender meets the requirements for civil commitment.  Generally, the Department of Corrections screens sex offender inmates at least six months before their scheduled release dates.  "If officials find the inmate is likely to be an SVP, he is referred to the Department . . . for a 'full evaluation' as to whether he meets the criteria in section 6600." <u>Ghilotti</u>, 27 Cal.4th at 903, *quoting* <u>Hubbart v. Superior Court</u>, 19 Cal.4th 1138, 1145 (1999).  Using appropriate assessment protocols, if at least two practicing psychiatrists or psychologists designated by the Director concur "that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director shall forward a request for a [commitment] petition . . . to the county" where the offender was convicted of the predatory sex crime, as provided in Section 6601(d). <u>Id.</u>  If the county's legal counsel agrees with the request, a petition for commitment is filed in the Superior Court. Section 6601(i).  Thereafter, as summarized in <u>Ghilotti</u>, *quoting, inter alia,* <u>Hubbart</u>, 19 Cal.4th at 1146-47:

> The filing of the petition triggers a new round of proceedings under the Act.  The superior court first holds a hearing [at which the person is entitled to the assistance of counsel] to determine whether there is "probable cause" to believe that the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release.  [Section 6602] . . . . If no probable cause is found, the petition is dismissed.  However, if the court finds probable cause within the meaning of this section, the court orders a trial to determine whether the person is an SVP under section 6600. . . .

---

[6] Unless otherwise designated, references to "Section" refer to the CAL. WELF. & INST. CODE.

[Section 6602, subds. (a), (b)].
. . .
   At trial, the alleged predator is entitled to "the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and [to] have access to all relevant medical and psychological records and reports." [Section 6603(a)]. Either party may demand and receive trial by jury.
. . .
   The trier of fact is charged with determining whether the requirements for classification as an SVP have been established "beyond a reasonable doubt." [Section 6604]. . . . [W]here the requisite SVP findings are made, "the person shall be committed for two years to the custody of the . . . Department . . . for appropriate treatment and confinement in a secure facility . . . ." [Section 6604].

Ghilotti, 27 Cal.4th at 904 (quotations and case citations omitted).

   Under the pre-2006 statutory revisions pertinent here and described in Ghilotti, any term of recommitment "shall also be for two years, and shall commence on the day the previous term expires," after implementing the same codified procedural safeguards as accompany initial civil commitment proceedings.[7] Ghilotti, 27 Cal.4th at 905, *citing* Section 6604.1, subd. (a).

   The United States Supreme Court has reviewed and upheld comparable statutory schemes. In Kansas v. Hendricks, 521 U.S. 346 (1997), the Court rejected a defendant's argument the Kansas equivalent of California's SVPA entailed criminal rather than civil proceedings and held that legislation on its face met substantive due process requirements, was nonpunitive, and thus did not violate the Double Jeopardy or *Ex Post Facto* clauses. Hendricks, 521 U.S. at 361-63 (relying on such considerations as: commitment under the Act implicated neither primary objective of criminal punishment (retribution or deterrence); prior criminal conduct "is used solely for evidentiary purposes, either to demonstrate that a 'mental abnormality' exists or to support a finding of future dangerousness;" a "criminal conviction is not a prerequisite for commitment;" there is no requirement to find scienter; measures to restrict the freedom of the dangerously mentally ill are "a legitimate

---

   [7] As currently articulated, a SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has been a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Section 6600(a)(1) (West Elec. Pocket Part 2009). The 1996 legislation was revised in 2006, modifying the predicate offense requirement to provide a person need only have been convicted of a sexually violent offense against one or more victims, rather than two or more victims as it had been previously defined. *See* Section 6600(a)(1), *as amended by* Prop. 83, § 24. The 2006 revisions also provided for an indeterminate term of commitment upon a SVP finding rather than renewable two-year terms. Section 6604.

- 8 -

07cv0500

nonpunitive government objective;" and, by definition, SVPs committed under sexually violent predator Acts suffer from mental abnormality or personality disorder "that prevents them from exercising adequate control over their behavior so are unlikely to be deterred by the threat of confinement"); *see* <u>United States v. Ursery</u>, 518 U.S. 267, 292 (1996) (the fact that legislation may be "tied to criminal activity" is "insufficient to render the statut[e] punitive").  The <u>Hendricks</u> Court rejected the contention "that the State's use of procedural safeguards traditionally found in criminal trials makes the proceedings here criminal rather than civil." <u>Hendricks</u>, 521 U.S. at 364 (the "State's decision 'to provide some of the safeguards applicable in criminal prosecutions cannot itself turn [civil commitment] proceedings into criminal prosecutions"), *quoting* <u>Allen v. Illinois</u>, 478 U.S. 364, 372 (1986).  Due process is satisfied if SVP civil commitment schemes at least follow "proper procedures and evidentiary standards" and require proof of dangerousness plus proof of an additional factor, such as mental disorder. <u>Id.</u> at 357-58; <u>Addington v. Texas</u>, 441 U.S. 418, 433 (1979) (those elements must be established by evidence equal to or greater than "clear and convincing"). California's SVPA is materially the same as the Kansas civil commitment statute.  *See* <u>Hubbart v. Knapp</u>, 379 F.3d 773, 779-81 (9th Cir. 2004) (so stating and denying habeas relief on the question whether the state court's interpretation and application of the SVPA violated federal due process).

## B.    Proper Respondent

Sisneroz is presently confined as a SVP at Coalinga State Hospital, having been previously in the custody of officials at Atascadero State Hospital ("ASH") pursuant to SVPA civil commitment and recommitment proceedings after service of his prison term for his most recent sex crimes. His March 30, 2007 Petition named the People of the State of California as Respondent.  A proper named respondent in federal habeas proceedings is one who "has the power to order the petitioner's release." <u>Smith v. Idaho</u>, 392 F.3d 350, 355, fn. 3 (9th Cir. 2004).  "If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." Rule 2(a), Rules Governing Proceedings under 28 U.S.C. § 2254.  Section 6604 provides SVP committees are in "the custody of the State Department of Mental Health."  Respondent argues the Petition should be dismissed without prejudice on personal jurisdiction grounds for failure to name a proper respondent.  Answer 13:18-14:6.

1   In a January 10, 2008 Order, the Magistrate Judge then assigned to this case had instructed

2   Sisneroz to file a Motion To Amend The Caption To Name The Proper Respondent. Dkt No. 5.  By

3   Order entered August 8, 2008, the Magistrate Judge granted his Motion To Amend and to substitute

4   as  the named Respondent the Executive Director of Coalinga State Hospital, whom he had identified

5   as Norm Kramer:

6   On January 16, 2008, pursuant to an order of the Court, Petitioner
    moved to amend his petition to substitute for "The People of the State
7   of California" the name of the warden or director of Petitioner's present
    place of confinement, who is the individual who has day-to-day control
8   of Petitioner. (Doc. 8).  **The Court notes that Norm Kramer is the
    Executive Director of the Coalinga State Hospital, where Petitioner
9   is currently housed.   Rule 25 of the Federal Rules of Civil
    Procedure allows the successor of a public office to automatically
10  be substituted as a party.**[8]   Accordingly, the Clerk of Court is
    DIRECTED to change the name of Respondent to Norm Kramer.

11  Dkt No. 19 (emphasis added).

12  Respondent's April 14, 2008 Answer was filed before Sisneroz's Motion To Amend was

13  decided.  Respondent apparently filed no objection to the Motion or to the naming of Mr. Kramer as

14  an appropriate substitute Respondent.  "Because the custodian is the state's agent – and the state is

15  therefore the custodian's principal – the state may waive the lack of personal jurisdiction on the

16  custodian's behalf."  Smith, 392 F.3d at 356.  Respondent nevertheless argues in opposition to the

17  grant of federal habeas relief: "Dr. Stephen W. Mayberg is the Director of the California Department

18  of Mental Health and is the proper respondent in this matter."  Answer 13:27-14:1.   However,

19  Respondent does not demonstrate the Executive Director of the state hospital exercising day-to-day

20  custodial control over Sisneroz is an *improper* Respondent.[9]  Analogizing to the naming of the warden

21

22

23      [8]  FED.R.CIV.P. ("Rule") 25(d) (Substitution of Parties -- Public Officers) provides, in pertinent part
    (emphasis added):  "An action does not abate when a public officer who is a party in an official capacity dies,
24  resigns, or otherwise ceases to hold office while the action is pending.  The **officer's successor** is automatically
    substituted as a party.  Later proceedings should be in the substituted party's name, but **any misnomer not
25  affecting the parties' substantial rights must be disregarded**.  The court *may* **order substitution** at any time,
    but the absence of an order does not affect the substitution".

26

27      [9]  Rule 25 does not exactly cover the party-respondent circumstance presented here.  The State of
    California was an improperly named party-respondent.  The court instructed Sisneroz to name a proper party
28  substitute.  He proposed Mr. Kramer as the substituted Respondent.  The court ordered that substitution.  Dr.
    Mayberg is not a "successor" to Mr. Kramer's position.

07cv0500

of a state prison as a proper respondent in 28 U.S.C. § 2254 habeas petitions, a head of the mental health facility where a SVP is in custody pursuant to a state court's civil confinement judgment should similarly be an appropriate Respondent in federal habeas proceedings.  The court approved the substitution of Mr. Kramer, a representative of the DMH with apparent custodial authority within the state hospital where Sisneroz is confined.  Dkt No. 19.  Formalizing a substitution of the DMH head as named Respondent would not affect "the parties' substantial rights," and any "misnomer" of this nature "must be disregarded."  Rule 25(d).  The Court accordingly finds no jurisdictional impediment to reaching the merits of the Petition on party misnomer grounds or need to *sua sponte* order a substitution, and Respondent's objection is **OVERRULED** as a ground to deny the Petition.

### C.   Neither Delay Nor Trial Consolidation Violated Due Process

As Ground One of his Petition, Sisneroz argues he was denied due process through:  the consolidation of the two SVP recommitment trials; the filing of the second recommitment petition after the two-year civil commitment period authorized by court Order had expired but while the first recommitment petition remained undecided; and his detention during the 26-month delay between the expiration of his authorized commitment period and an Order authorizing recommitment after one trial deciding successive two-year recommitments.[10]

Involuntary civil commitment "constitutes a significant deprivation of liberty that requires due process protection."  Addington, 441 U.S. at 425.  The Addington Court noted "the initial inquiry in a civil commitment proceeding is very different from the central issue in either a delinquency proceeding or a criminal prosecution."  Id. at 429, 432-33 (to meet due process demands, the civil

---

[10]   Sisneroz cites Goldberg v. Kelly, 397 U.S. 254, 262 (1970) for the proposition "when the government acts in such a way as to confer a statutory benefit or right upon a Person qualified to receive it, . . . the benefit cannot be taken away without due process of law."  Pet. pp. 5-6.  Goldberg is distinguishable, as it addresses procedural due process requirements for an evidentiary hearing in the context of withdrawal of welfare benefits conferred by statutory entitlement to qualifying persons.  By attempted analogy, Sisneroz argues "the SVPA confers the absolute right to timely, updated and periodic review of SVP commitment [and] . . . requires the prosecution to justify any continued commitment every two years," contending that "did not happen in Petitioner's case," and the "delays violated petitioner's due process and require reversal."  Pet. p. 6.  The Goldberg Court established: "considerations of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action."  Goldberg, 397 U.S. at 363 (internal quotations and citation omitted).  The SVPA affects a person's liberty interest, the due process implications of which are discussed below.

- 11 -

1   commitment standard "has to inform the factfinder that the proof must be greater than the

2   preponderance-of-the-evidence standard applicable to other categories of civil cases," but "the

3   reasonable-doubt standard is inappropriate in civil commitment proceedings"); *see also* Hendricks,

4   521 U.S. at 357-58 (holding state SVP civil commitment schemes satisfy due process if they "follow

5   'proper procedures and evidentiary standards' and require proof of dangerousness plus proof of an

6   additional factor, such as mental disorder" established "by clear and convincing evidence").

7   　　　Sisneroz was completing an unexpired two-year SVP recommitment term at the time the first

8   of the two recommitment petitions at issue here was filed.  Although the first petition was filed before

9   expiration of his then-current commitment period, that term expired before a recommitment Order

10  issued.  The second recommitment petition was filed in August 2003, before trial on the first petition

11  had occurred and after his previously-ordered recommitment term had expired.  He argues from those

12  facts he "was not under any valid commitment order" at the time the second recommitment petition

13  was filed, so "there was no valid commitment to extend." Pet. p. 9.  He also argues strict construction

14  of the SVPA requires a finding the "delay and resulting lack of a valid commitment to extend could

15  not be remedied by the filing of a subsequent petition to recommit," citing Peters v. Superior Court,

16  79 Cal.App.4th 845, 847-48 (2000) (holding the statutory requirements for initial SVPA commitments

17  apply equally to recommitments, and the state may not recommit a sexually violent predator on the

18  basis of a single psychological evaluation when the statute called for at least two).  Pet. p. 9.

19  　　　Even reaching Sisneroz's arguments on what appear to be solely state law interpretation issues

20  he attempts to characterize as jurisdictional or "due process" infirmities (equating the codified SVPA

21  due process protections with a state-conferred "benefit"), the California courts have rejected his

22  particular irregularity arguments. *See* People v. Superior Court (Ramirez), 70 Cal.App.4th 1384, 1390

23  (1999) (failure to complete the trial on a subsequent petition before the expiration of the prior

24  commitment period does not divest the trial court of jurisdiction to proceed on the subsequent

25  petition); Orozco v. Superior Court, 117 Cal.App.4th 170, 176-79 (2004) (holding there is no

26  requirement that an Order to recommit a SVP be obtained before extending the confinement beyond

27  the two-year commitment period while a timely-filed recommitment petition remains under review,

28  and the failure to obtain a recommitment Order on a second/subsequent petition before the expiration

of the underlying second commitment term does not divest the court of jurisdiction); *see also* <u>Litmon</u> <u>v. Superior Court</u>, 123 Cal.App.4th 1156, 1171 (2004) ( a case where trial on recommitment petitions affecting two SVPs had been delayed for 23 months holding "the only act that could divest the court of subject matter jurisdiction and trigger a dismissal is the People's failure to **file** a petition for recommitment before the prior commitment expires") (emphasis added); *see also* Section 6602, requiring that on a finding of probable cause, "the **judge shall order that the person remain in custody in a secure facility until trial is completed**" (emphasis added). Sisneroz cites no United States Supreme Court authority to support his argument the timing of the filings and rulings on his recommitment petitions requires he be released.   In the absence of such law, the state court's denial cannot be contrary to or an unreasonable application of clearly established Supreme Court authority. *See* <u>Lockyear</u>, 538 U.S. at 73-76.

  With respect to the duration of the delay as purportedly raising a due process issue, the probable cause hearing on Sisneroz's first recommitment petition was held on May 16, 2002, with a finding of probable cause and the setting of a December 4, 2002 trial date. CT 20-96. That trial date was subsequently vacated and continued several times. *See, e.g.*, CT 115, 123 (a February 24, 2003 trial date vacated and reset for June 5, 2003, "per agreement of counsel"); CT 127, 129 (People moved for continuance due to unavailability of expert, with defense counsel represented to have "expressed he would like a ninety day continuance"); CT 132, 133-34 (People's motion for continuance due to unavailability of an expert witness, with the representation defense counsel had indicated he would not oppose the continuance); CT 137.  The second recommitment petition was filed August 29, 2003. CT 138-156.  The September 15, 2003 trial date on the first petition was trailed to September 17, 2003, at which time the probable cause hearing on the second petition was set for December 12, 2003, a date proposed by defense counsel, who represented Sisneroz was willing to waive time. CT 159; 1 RT 2-3.  At the December 12, 2003 probable cause hearing, defense counsel acknowledged he and his client had requested trial continuances. 2 RT p. 60.  As traced by the district attorney at that hearing:

> To provide just a little background, Your Honor, the initial
> [recommitment] petition in this case was filed January 22nd of '02
> which was to cover a commitment period between 2/2 of '02 through

2/2 of '04 for two years, and it has never went [*sic*] to trial yet. [¶] We've went [*sic*] through a probable cause hearing, largely because of [*sic*] the defendant in this case has been continually – **continued 'cause he was seeking other legal interests at the time and did not want to come to court**. [¶] Subsequently, . . . the evaluations for the initial petition were over two years old, so the People requested updated evaluations of the defendant, and those were received I believe in late August or early September this year. [¶] So we felt it was sufficient to file a second petition using those updated evaluations that would potentially cover a commitment period between 2/2of '04 and 2/2 of '06, so we could combine those two petitions and have a trial, and today we're here on the petitions that were filed in September.

2 RT pp. 52-53 (emphasis added).

Sisneroz waived his appearance at the December 12, 2003 hearing. His counsel raised several objections Sisneroz had requested be argued in support of dismissing the second recommitment petition rather than finding probable cause for trial. Those objections included Sisneroz's contentions: the SVPA violates Eighth Amendment cruel and unusual punishment prohibitions; the law is impermissibly *ex post facto* because he had agreed to a certain sentence through his plea bargains but was being detained longer, warranting a set-aside of the bargains; his "no contest" pleas should not be treated as convictions; and collateral estoppel predicated on his criminal sentences. 2 RT pp. 51-56. Defense counsel concurred with the court's observation all those issues had been largely decided against him in published authority, but counsel indicated an intent to file noticed motions "at a future time prior to trial" to challenge those rulings. 2 RT pp. 51-56. The court issued a ruling finding probable cause on the second recommitment petition and setting an April 19, 2004 trial date. CT 163. Sisneroz waived a jury, and the bench trial on the consolidated petitions began April 20, 2004. CT 163-165, 186. On April 22, 2004, the court found him to be a SVP and ordered him recommitted for a two-year term to expire February 2, 2006. CT 188-191.

The foregoing record reveals the multiple continuances were largely unopposed. Sisneroz had pursued other legal remedies in the interim, including *pro se* motions to dismiss and challenges to the constitutionality of the SVPA legislation as enacted and as applied to himself. *See, e.g.*, CT 02-08; CT 99-114; CT 117-122. In addition, through his counsel at the December 12, 2003 probable cause hearing, he expressly requested a trial date in April or May 2004, a further delay of several months his counsel represented was based on the unavailability of "some of the witnesses" ascertained through

"a check on a number of 'em in another proceeding." 2 RT p. 58. The Court of Appeal rejected Sisneroz's contention delay in bringing the first recommitment petition to trial violated his due process rights, in reliance on <u>Orozco</u>, noting that court held no due process right is violated when responsibility for the delay is attributable to the defendant or the defendant's attorney.[11] Lodg. 4, p. 5, *citing* <u>Orozco</u>, 117 Cal.App.4th at 179-80. "[T]he SVP Act does not specify the time within which the recommitment trial must occur," although "a reasonable time after the probable cause hearing" is to be inferred. <u>Orozco</u>, 117 Cal.App.4th at 179-80 (concluding the "remedy for delay is not dismissal but rather, an order directing that the matter proceed to trial forthwith").

The Court of Appeal reasonably concluded Sisneroz "either agreed to or did not oppose the delays in bringing the first commitment petition to trial," so he must be found to bear some responsibility for the delay. Lodg. 4 pp. 5-6; *see* CT 123, 129, 133-34; 1 RT 2. He expressly waived the September 17, 2003 trial date and requested a new date be set months later, and "good cause was demonstrated for a majority of the delays based on evidence the expert witnesses were unavailable to testify, largely because they were subject to subpoenas to testify in other commitment proceedings," so the circumstances did not present "the type of situation which <u>Orozoco</u> disapproved; i.e., a trial court's unjustified acquiescence with the parties' 'leisurely' approach in bringing the case to trial." Lodg. 4, pp. 5-6; *see* CT 128-131, 133-134. In any event, Sisneroz recites no prejudice from the delay to warrant federal habeas relief on this theory.[12]

---

[11]  The Court of Appeal also rejected Sisneroz's due process argument on the additional ground Sisneroz "waived the issue of delay in bringing the matter to trial by failing to raise it before the trial court." Lodg. 4, p. 5, *citing* <u>Orozo</u>, 117 Cal.App.4th at 179-80 (issue of delay in bringing first recommitment petition to trial waived because not timely raised prior to expiration of the first recommitment term).

[12]  Respondent briefed the prejudice question. While arguing the speedy trial clause of the Sixth Amendment does not apply to civil commitment proceedings, but only to criminal prosecutions, Respondent nevertheless cites <u>Barker v. Wingo</u>, 407 U.S. 514 (1972) as articulating "a four-part balancing test to determine whether governmental delay deprived a criminal defendant of his Sixth Amendment right to a speedy trial." Answer 20:12-19 ("The four factors are:  the length of the delay; the reasons for the delay; the defendant's assertion of his right for a speedy trial; and the prejudice caused by the delay"). ". . . Petitioner does not affirmatively allege, much less explain in what manner, he was prejudiced by the fact that trial on the December 4, 2001, petition did not commence until April 20, 2004. This is especially true given that, by operation of [Section] 6604.1(a) as it read prior to the change from two-year to indeterminate terms of commitment, no matter when trial on the December 4, 2001, petition was held, the two-year term that was the subject of the petition would run from the date of the previous term of commitment." Answer 21:14-20.

1    In addition to his due process challenge to the delay in deciding the first recommitment

2    petition, Sisneroz argues there was no statutory authority for the consolidation for trial of the two

3    petitions covering successive two-year recommitment periods.  He notes he "personally objected to

4    the consolidation of the delayed petition and the newer one." Pet. p. 11.  Defense counsel stated at

5    the December 12, 2003 probable cause hearing *he* had no objection and did not think there were

6    grounds to oppose consolidation, but his client did object:

> . . . I did make a continuance motion at one point, and I believe that I
> indicated on the record that **if they consolidate, [it] would be over my
> client's objection**.  We couldn't actually oppose it, and I think there
> was a ruling stating that it would be consolidated . . . .

2 RT p. 60 (emphasis added); *see also* 1 RT 2-3.

    The Court of Appeal rejected Sisneroz's arguments on this theory in reliance on Litmon, 123

Cal.App.4th1156.  The Litmon court found "if the only issue to be tried is whether an SVP's *current*

mental condition justifies his or her continued confinement for another two years," consolidation can

be an appropriate device, while also noting "unless an SVP consents to it, resort to consolidation

should rarely be necessary."  Id. at 1173-76, 1171 (issuing writs of mandate directing the superior

court to set recommitment petitions for trial forthwith in circumstances where consolidation of

successive SVP civil recommitment proceedings, over defendants' objections, warranted vacating the

consolidation orders).  The question presented in Litmon was "whether, and to what extent, trial courts

have authority to consolidate recommitment proceedings under the SVPA." Lodg. 4, p. 3.  Although

that ground for relief is predicated on the interpretation of state law, to the extent a due process

violation may be implicated, this Court reviews the result.

> In addressing that question, the [Litmon] court noted that, because the
> SVPA "has few time limits," lengthy delays "can and do occur" in
> SVPA proceedings. ([Litmon, 123 Cal.App.4th] at p. 1170.)  The court
> concluded that, to combat the problem of extensive delays, a trial
> court's inherent administrative powers must include the authority to
> "consolidate recommitment petitions under the SVPA in the proper
> case. [Citation.]"  (Id. at pp. 1172-1175.)

Lodg. 4, p. 3.

> However, as the Litmon court observed, the trial court's
> inherent authority is not without limits.  Section 6604 provides that the
> SVP must not be kept in custody beyond the two-year period without
> obtaining a subsequent extended commitment.  In effectuating the

- 16 -

Legislature's intent in adopting this language, Litmon limited consolidation to those cases where there are compelling reasons to resort to the procedure or where the defendant consents to it. ( Litmon v. Superior Court, *supra*, 123 Cal.App.4th at pp. 1175-1176.) **Consolidation, therefore, is inappropriate where the circumstances indicate all the following: the trial can be held within the two-year period; the defendant is ready to proceed with trial; and the defendant objects to a continuance or opposes the motion to consolidate**. ( Id. at p. 1176.)

Lodg. 4, pp. 3-4 (emphasis added).

Sisneroz attempts to show prejudice from the consolidation of the two recommitment petitions by arguing no trier of fact would likely be able to assess the evidence separately as to the two discrete two-year periods of time, and he was forced "to defend allegations at trial where two sets of evaluations concerned two different time periods and had an improper cumulative effect." Attachment to Petition at pp. 9-10. However, Litmon establishes the finding a SVP is dangerous is to be judged from "the time the verdict is rendered," upon a showing he "'currently' suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior and which 'makes' him dangerous and 'likely' to reoffend." Litmon, 123 Cal.App.4th 1156, 1170, *quoting* Hubbart, 19 Cal.4th 1138, 1162.  It is the present inability to control sexually violent behavior which determines whether the SVP is dangerous if not confined.  Sisneroz's contention two separate time periods must be tried when petitions are consolidated thus does not comport with California's interpretations of its own law.

The Court of Appeal found Sisneroz's circumstances, like the Litmon defendants', involved "'overlapping . . . recommitment petitions' (the first petition was still pending when the second was filed, . . . which were consolidated after many continuances . . . , and after defendant had already served his two-year recommitment period under the first petition." Lodg. 4, p. 4.

But this is where similarities end.  Unlike the defendants in Litmon, defendant never objected to any of the continuances of the trial date. Rather, the record reflects that most of the continuances were based on unopposed motions filed by the People to continue trial due to the unavailability of the expert witnesses who had evaluated defendant for purposes of determining whether he was an SVP.  In addition, the new trial dates requested were sought after conferring with defense counsel. **Moreover, defendant, through his counsel, consented to**

- 17 -

1

2

3

**consolidation of the two petitions**. [13] The record reflects it was defense counsel who drew the court's attention to the parties' agreement to consolidate the petitions.  Under these circumstances, we conclude that the court properly exercised its inherent authority to consolidate trial on the two petitions for extended commitment.

4   Lodg. 4, p. 4 (emphasis added).

5       Sisneroz relies on <u>Cooks v. Newland</u>, 395 F.3d 1077 (9th Cir. 2005) for the proposition the

6   consolidation of two consecutive recommitment petitions denied him federally-protected due process.

7   However, that case involved the consolidation of two *criminal prosecutions* rather than two *civil*

8   *commitment petitions*, and  Sisneroz concedes his SVPA proceedings are civil, not criminal in nature.

9   Pet. p. 8 ("Trials under the SVPA are civil in nature, not penal").  Moreover, the consolidation in

10  <u>Cooks</u> was *upheld* on federal habeas review, providing no support for his due process violation

11  arguments on the consolidation issue.[14]  Sisneroz's other arguments challenging consolidation raise

12  only state law issues not cognizable on federal habeas review.  <u>Estelle</u>, 502 U.S. at 68.

13      As traced above, the Court of Appeal rejected on the merits Sisneroz's due process and

14  statutory violation arguments based on timing of the recommitment filings, delays in ruling on the first

15  petition, and consolidated trial of the two petitions.  Sisneroz identifies no authority for a finding those

16  results were contrary to or involved an unreasonable application of any controlling United States

17  Supreme Court holding, or involved an unreasonable finding of the facts.  18 U.S.C. § 2254(d).

18  Accordingly, habeas relief on this ground is **<u>DENIED</u>**.

19      **D.      Hearsay Challenge Lacks Merit**

20      Sisneroz cites <u>People v. Otto</u>, 26 Cal.4th 200, 209 (2000) and <u>Foucha v. Louisiana</u>, 504 U.S.

21

22      [13]  As noted above, although Sisneroz appears to have personally objected to the consolidation by the

23  time of the December 12, 2003 probable cause hearing on the second petition (2 RT 60; Pet. pp. 5, 11), he expressly adopted the procedural history and underlying factual findings of the Court of Appeal, including

24  necessarily the record of counsel's non-opposition to the consolidation and representation to the court there were no grounds to oppose. In the course of the September 17, 2003 proceedings, defense counsel had announced

25  the parties' intention "to consolidate both [petitions] so that we have only one hearing" (1 RT 2), with no qualification his client objected.

26      [14]  The federal court in <u>Cooks</u> denied habeas relief, holding the Sixth Amendment rights to counsel and

27  to represent oneself do not prevent joinder of separate prosecutions, and the state appellate court did not unreasonably apply relevant, clearly established United States Supreme Court authority by approving the

28  consolidation of two related robbery prosecutions, despite the result the defendant had to choose between representing himself or having counsel represent him.  <u>Cooks</u>, 395 F.3d at 1080-81.

71, 80 (1992) for the general proposition:  "Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections."  Pet. p. 12.  As Ground Two of his Petition, Sisneroz argues his due process and witness confrontation rights were violated at his consolidated bench trial by admission of hearsay evidence through the testimony of the psychiatric experts describing the details of his predicate sex crimes, allegedly based on unreliable documentary evidence, despite repeated defense objections citing Crawford, 541 U.S. 36 (2004).  Pet. p. 3; *see* 3 RT 94-95, 97-99, 172, 248-249.

The Sixth Amendment provides, in pertinent part:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."  The United States Supreme Court has held an accused's Sixth Amendment right to confront witnesses is "a fundamental right and is made obligatory on the States by the Fourteenth Amendment."  Pointer v. Texas, 380 U.S. 400, 403 (1965).  "[T]his bedrock procedural guarantee applies to both federal and state prosecutions."  Crawford, 541 U.S. at 42.  In *criminal cases*, out-of-court statements testimonial in nature are barred under the Sixth Amendment Confrontation Clause, unless the witnesses are unavailable and the defendant had a prior opportunity to cross-examine them, irrespective of whether the court deems the statements to be reliable.  Id. at 54-55.

Sisneroz asks this Court to vacate the recommitment Order on grounds Crawford established a new test for admissibility of hearsay statements, rejecting the prior "adequate indicia of reliability" standard adopted in Ohio v. Roberts, 448 U.S. 56 (1980).  Pet. pp.4-5, 11.  He challenges the continued viability of California Supreme Court authority applying the Roberts standard to uphold the constitutionality of the SVPA statutory hearsay exception as not violating to due process, in particular Otto, 26 Cal.4th 200 (admitting evidence in the form of "hearsay documents containing multiple levels of hearsay statements" and of "hearsay statement[s] of non-testifying witnesses and documentary evidence which contain [s]uch statements" over defense objections).[15]

---

[15]   The SVPA hearsay exception provides, in pertinent part:  ". . . The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health. . . ." CAL. WELF. & INST. CODE § 6600(a)(3).  "As originally enacted, the SVP Act did not permit the use of

- 19 -

Sisneroz is correct the <u>Crawford</u> Court abrogated the "adequate indicia of reliability" test as a basis for "admission of an unavailable witness's [testimonial] statement against a *criminal defendant*" who has not had a confrontation opportunity to test the evidence through the adversary process. <u>Crawford</u>, 541 U.S. at 67-69 (emphasis added). However, proceedings to ascertain whether a convicted offender is a SVP are civil in nature, with the objective to incapacitate and treat, not to punish. <u>Seling v. Young</u>, 531 U.S. 250, 260-61, 265 (2001). Sisneroz acknowledges the civil nature of SVP commitments, rendering his reliance on cases from criminal proceedings irrelevant to his Petition claims. Procedural due process safeguards attaching to civil commitments are not coextensive with those required in criminal proceedings governed by Sixth Amendment standards. *See* <u>Vitek v. Jones</u>, 445 U.S. 480, 489-93 (1980) (due process at civil commitment hearings requires only "some" right to confront and cross-examine witnesses and other "procedures appropriate in the circumstances" before a convicted felon "is found to have a mental disease and [is] transferred to a mental hospital"). Accordingly, <u>Crawford</u> does not require the rejection of authority such as the <u>Otto</u> decision.

> We recognize that involuntary civil commitment "constitutes a significant deprivation of liberty that requires due process protection." <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979). **But the Sixth Amendment right to confrontation does not attach in civil commitment proceedings**. . . . Indeed, **"the procedures required for a civil commitment are not nearly as rigorous as those for criminal trials, or even juvenile proceedings**." [Citation omitted.] We therefore reject Carty's argument that his Sixth Amendment rights were violated during his initial civil commitment proceeding . . . .

<u>Carty v. Nelson</u>, 426 F.3d 1064, 1073-75 (9th Cir. 2005) (parallel citations omitted) (emphasis added).

The <u>Carty</u> court traced United States Supreme Court authority controlling Sisneroz's due process and confrontation challenges in the civil commitment context. That court looked first to <u>Vitek</u>, 445 U.S. 480. The <u>Vitek</u> Court held in order to satisfy due process, a prisoner facing transfer

---

documentary evidence." <u>Carty</u>, 426 F.3d at 1073. "The California State Legislature, however, modified the SVP Act 'after prosecutors complained that they must bring victims back to court to relitigate proof of prior convictions.' " <u>Id.</u> at 1073, *quoting* <u>Otto</u>, 26 Cal.4th at 206-07 (in permitting the use of probation and sentencing reports to establish the details surrounding the commission of an offense, the SVPA authorizes the admission of multiple-level hearsay). *See also* Section 6600.1 ("If the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." Sisneroz's 1991 predicate offense convictions involved his no contest pleas to two counts involving a nine-year-old boy. Suppl. CT 10, 20-22.

1  for involuntary commitment to a mental hospital is entitled to: (1) written notice; (2) a hearing at

2  which the evidence relied upon for the commitment is disclosed to the prisoner; (3) an opportunity at

3  the hearing for the prisoner to be heard in person, to present testimony and documentary evidence, and

4  to cross-examine witnesses called by the State; (4) an independent decision-maker; (5) reasoned

5  findings of fact; (6) legal counsel; and (7) effective and timely notice of those rights.  Carty, 426 F.3d

6  at 1074, citing Vitek 445 U.S. at 494-97.  The Carty court next reviewed the holdings in Hendricks

7  supporting that Court's conclusion the SVPA legislation like California's comports with the due

8  process requirements applicable to civil proceedings.  Id.; see Hendricks, 521 U.S. at 356-57, 364-65,

9  370-71 The Carty court found "enlightening" the California Supreme Court's Otto decision, upholding

10  the SVPA statutory hearsay exception in deciding that defendant's challenge to the use of child victim

11  statements contained in a probation report used to establish "substantial sexual conduct" at his SVP

12  civil commitment proceedings.  Id. at 1074-75 (noting those defendants had received their probation

13  reports prior to being sentenced for the predicate offenses and did not challenge the report contents

14  at that time, and the factual basis for Otto's no contest plea was contained in the police reports

15  detailing the predicate offenses).

16      Like Carty, Sisneroz waived his right to put the government to its proof when he accepted

17  negotiated plea bargains to the predicate sex crimes charges, and he was not denied any "necessary

18  safeguards required by the Constitution" at his civil commitment trial.  See Carty, 426 F.3d at 1076.

19  "In light of Vitek, Hendricks, and the persuasive opinion in Otto," the Carty court rejected the claims,

20  among others, the SVP's constitutional rights (confrontation, substantive due process, and equal

21  protection) were violated through admission of statements from his minor victims as memorialized

22  in his probation report used against him at his civil commitment proceedings.  Like Carty, Sisneroz

23  identifies no United States Supreme Court case imposing on a prosecutor "the obligation to proffer

24  only live testimony at civil commitment hearings under the SVP Act" (Carty, 426 F.3d at 1074-75),

25  and he had the opportunity before accepting a plea bargain years earlier to go to trial and confront the

26  child victim witnesses, a right he waived along with his waiver of trial on the underlying criminal

27  offenses.  "Crawford neither expressly nor impliedly extended the right of confrontation to civil

28  proceedings."  People v. Fulcher, 136 Cal.App.4th 41, 55 (2006) (holding "defendants in civil SVP

proceedings do not have a Sixth Amendment right of confrontation," although they do have a less demanding due process right of confrontation).  Moreover, the SVPA's codified hearsay exception encompasses the very evidence Sisneroz challenges:  the facts associated with the underlying criminal convictions.

The Court of Appeal reached Sisneroz's Confrontation Clause claim in its reasoned decision to find <u>Crawford</u>, a criminal case "based solely on the Sixth Amendment right of confrontation," does not apply to SVPA commitments.  Lodg. 4, pp. 6-7 ("At best, <u>Crawford</u> leaves open the question whether testimonial hearsay statements must be excluded even under the less stringent due process confrontation standard"), *quoting* <u>People v. Angulo</u>, 129 Cal.App.4th 1349, 1367-68 (2005), *and observing* "as other courts have noted, SVP commitments are civil, not criminal proceedings, and <u>Crawford</u> only applies to criminal prosecutions," *citing, inter alia* <u>Hendricks</u>, 521 U.S. at 371; <u>Hubbart</u>, 19 Cal.4th at 1162-63.  That state court result was neither contrary to nor involved an unreasonable application of any controlling United States Supreme Court holding.  Sisneroz received an individual determination of his present mental condition in compliance with the SVPA, as well as all process due him under <u>Vitek</u> and <u>Addington</u>. Federal habeas relief on this ground accordingly must be **<u>DENIED</u>**.

**III.    CONCLUSION**

For all the foregoing reasons, the Court finds Sisneroz is not civilly confined under the SVPA in violation of federal constitutional law.  Accordingly, **IT IS HEREBY ORDERED** Sisneroz's habeas petition is **<u>DENIED</u>** in its entirety, terminating this action.

DATED:  February 5, 2009

_____
JOHN A. HOUSTON
United States District Judge